UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE E. WEBSTER,

        Plaintiff,　　　　　　　　Case No. 2:23-cv-13033

v.　　　　　　　　　　　　　　　Honorable Susan K. DeClercq
　　　　　　　　　　　　　　　　United States District Judge
AUTOZONE DEVELOPMENT LLC et al.,

        Defendants.
_____/

**OPINION AND ORDER DISMISSING COUNTS I – IV OF PLAINTIFF'S COMPLAINT (ECF No. 1) AS TO DEFENDANTS AUTOZONE DEVELOPMENT LLC, AUTOZONE STORES LLC, AUTOZONE INC, CALEB MILTON, AND JARED LLOYD.**

In January 2020, Dwayne Webster stopped at the AutoZone in St. Clair Shores, Michigan. But rather than walking out with the brakes he meant to buy, he walked out in handcuffs after employees accused him of theft. Those accusations turned out to be wrong—Webster had nothing to do with any theft. Webster alleges that he was profiled because he is Black and that the employees called him racial slurs while he was in the store.

The events as Webster describes are deeply concerning and no doubt must have caused significant distress. However, because his claims against AutoZone and its employees are either time-barred or fail to state a claim on which relief may be granted, they must be dismissed.

## I.  BACKGROUND

The following factual allegations come from Webster's complaint. ECF No. 1. At the motion to dismiss stage, they must be accepted as true, and all reasonable inferences must be drawn in his favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

On January 27, 2020, Webster, an African American man who owns and operates towing businesses, was shopping for brakes at an AutoZone store in St. Clair Shores, Michigan. ECF No. 1 at PageID.7. While he was shopping, two AutoZone employees—Sidney Pallaschke and Jared Lloyd—called the St. Clair Shores Police Department and reported that Webster had stolen from the store. *Id.* at PageID.7. Specifically, they claimed to see Webster leave the store with a white man who stole a cold-air intake kit. *Id.* This report was entirely false; Webster was not involved in any thefts from the store, nor did the employees ever see Webster and the white man interact. *Id.* at PageID.7–8.

Webster alleges that the employees filed these false claims against him because of his race and that their actions were consistent with a storewide "policy of racial animus against African Americans." *Id.* at PageID.8. Specifically, he alleges that the AutoZone store implemented the following policies:

1. Heightened surveillance of Black customers;
2. Communicating via walkie-talkies while surveilling Black customers;

    3. Not allowing Black customers to use the bathroom when they ask to do so and instead telling any Black customer who asks to use the restroom that the bathroom is broken;

    4. Use of the code word "Canadians" to refer to Black customers.

*Id.* at PageID.9–10.

Webster also alleges the following, consistent with the custom of anti-Black racial animus throughout the AutoZone store:

    1. District Managers Caleb Milton and/or David Bertram referred to Black customers as [the n-word].

    2. Defendants, including but not limited to Pallaschke and Lloyd, referred to Webster's business as a "hip hop hood shop."

    3. Defendants Pallaschke and Lloyd referred to Webster as "fucking monkey" and "gigaboo."

*Id.*

Based on the false reports by Defendants Pallaschke and Lloyd, Webster was arrested and charged with felony first degree retail fraud. *Id.* at PageID.10, 16. The charges were dismissed on December 18, 2020, for lack of probable cause. *Id.* at PageID.16, 21.

Webster filed this case on November 30, 2023. ECF No. 1. He brings four

claims against AutoZone and its employees Sidney Pallaschke,[1] Caleb Milton, Jared Lloyd, and David Bertram[2]: (1) violation of Title II of the Civil Rights Act for Discrimination in a Place of Public Accommodation, 42 U.S.C. § 2000a, *et seq.*, (2) violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) for Discrimination in a Place of Public Accommodation, MICH. COMP. LAWS § 37.2302, (3) abuse of process, and (4) vicarious liability. ECF No. 1 at PageID.17–31. He also raises four claims against the city of St. Clair Shores and its officials and officers. *Id.* at PageID.31–39.

Defendants AutoZone, Lloyd, and Milton moved to dismiss on February 22, 2024.[3] ECF No. 17. On September 12, 2024, this Court held a hearing on the

---

[1] Defendant Pallaschke was served with Summons and the Complaint on February 22, 2024. ECF No. 24. No attorney appearance has been filed on his behalf, nor has he filed an answer to the Complaint. However, Defendant Pallaschke did file an "affidavit" in response to the Complaint on March 5, 2024, disputing many of the facts alleged in Webster's Complaint. ECF No. 19.

[2] On April 8, 2024, an unaffiliated party with the same name as Defendant Bertram was mistakenly served with the Summons and Complaint. *See* ECF Nos. 22; 25; 29. The unaffiliated party has since been dismissed from this case, *see* ECF No. 29, and the correct Defendant Bertram was served with the Summons and Complaint on May 11, 2024, *see* ECF Nos. 27; 29. No attorney has filed an appearance on his behalf, nor has he filed an answer to the Complaint.

[3] Defendants Pallaschke and Bertram are not part of the Motion to Dismiss currently before the Court. ECF No. 17. However, the complaint, motion, and response do not factually distinguish Defendants Pallaschke and Bertram from the Moving Defendants. As such, this Court *sua sponte* considers the claims against *all* of the named AutoZone employees in this opinion. *Silverton v. Dept. of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where

- 4 -

motion.

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439 (6th Cir. 2008).

The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is sufficient if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. ANALYSIS

### A. Count I: Violation of Title II of the Civil Rights Act

Webster asserts that AutoZone and its employees violated his right to the

---

such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.") (collecting cases).

full and equal enjoyment of a place of public accommodation by falsely reporting that he had stolen from the store. ECF No. 1 at PageID.17–22. Moving Defendants argue that this claim must be dismissed because (1) it is time-barred, (2) the store is not a place of public accommodation, and (3) Webster does not allege he was denied service at AutoZone. ECF No. 17 at PageID.141–45.

As a threshold matter, Title II creates a cause of action for individual plaintiffs to seek injunctive relief, not damages. *See* 42 U.S.C. § 2000a-3(a); *see also Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 719 (1974) ("When a plaintiff brings an action under [Title II], he cannot recover damages.").

Although Webster does make a cursory mention of injunctive relief in his complaint, ECF No. 1 at PageID.39, he fails to offer facts suggesting that injunctive relief is available to him. Namely, Webster does not allege "a real or immediate threat that [he] will be wronged again—a likelihood of substantial and immediate irreparable injury." *Jackson v. Walmart, Inc.*, No. 1:23-CV-01110, 2024 WL 2215952 at *6 (N.D. Ohio May 16, 2024) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Instead, Webster alleges only discrimination in the past, in 2020. ECF No. 1 at PageID.18–21. Thus, because Webster has not alleged any threat of future harm, his Title II claim must be dismissed as to the Moving Defendants. *See Glass v. Laketran Transp. Admin.*, No, 1:15 CV 2640, 2016 WL 554839, at *2 (N.D. Ohio Feb. 10, 2016) ("In the absence of any allegation of

continuous or ongoing discrimination . . . against Plaintiff, she has not stated a [claim] that may be remedied by way of injunctive relief under Title II.").

Even if Webster had sufficiently alleged a basis for injunctive relief under Title II, the claim must still be dismissed. Unlike ELCRA, retail stores are not places of public accommodation under the federal Civil Rights Act. *Compare* MICH. COMP. LAWS § 37.2301 ("Place of public accommodation' means a business . . . whose goods . . . are extended, offered, sold, or otherwise made available to the public") *with* 42 U.S.C. § 2000a(b) (listing covered establishments and omitting retail stores); *see also Priddy v. Shopko Corp.*, 918 F. Supp. 358, 359 (D. Utah 1995) ("The clear implication is that Congress did *not* intend to include retail establishments—thus the need to make clear that restaurant type facilities within a retail establishment were covered under [Title II]. If retail establishments were also intended to be covered, there would be no need for this provision.").

Because Webster fails to allege a basis for injunctive relief, and because there are no allegations that the retail store was "principally engaged in selling food for consumption on premises,"[4] his Title II claim must be dismissed.

### B. Count II: Violation of Elliott-Larsen Civil Rights Act (ELCRA)

---

[4] Webster argues that the AutoZone store offered food and drinks for purchase in the store. ECF No. 20 at PageID.177. However, he has not alleged that the store was "principally engaged" in selling food to be consumed on the premises, nor do the facts alleged support such an inference. As such, the exception for lunch counters inside retail stores would not apply.

Webster also asserts that the employees' actions violated ELCRA, MICH. COMP. LAWS § 37.2101, *et seq*. ECF No. 1 at PageID.22. Defendants AutoZone, Milton, and Lloyd argue that this claim must be dismissed because it is time-barred under ELCRA's three year statute of limitations. *See* MICH. COMP. LAWS § 600.5805. This Court agrees.

Generally, a motion under Civil Rule 12(b)(6) is an "inappropriate vehicle for dismissing a claim based on the statute of limitations" because a plaintiff "need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, "sometimes the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* In these cases, dismissal under Civil Rule 12(b)(6) is appropriate. *Id.*

Here, Webster's allegations focus on a single day: January 27, 2020. ECF No. 1 at PageID.23. He filed his complaint on November 30, 2023, more than three years later. ECF No. 1. However, outside of his complaint, he argues that the claim is not time-barred because the "continuing violations" doctrine applies, and so the claim continued to accrue until December 18, 2020, when Defendants Pallaschke and Lloyd testified at Webster's preliminary examination. ECF No. 20 at PageID.165.

But Michigan law precludes Webster's argument: the continuing violations doctrine does not apply to ELCRA, and thus "a person must file a claim under

[ELCRA] within three years of the date his or her cause of action accrues." *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 658–59 (Mich. 2005); *Ogden v. Saint Mary's Med. Ctr.*, No. 06-11721-BC, 2007 WL 2746626, at *6 (E.D. Mich. Sept. 19, 2007) (citing *Garg*, 696 N.W.2d at 658), *on reconsideration in part*, No. 06-11721-BC, 2007 WL 9770726 (E.D. Mich. Dec. 10, 2007). Thus, even if Webster could establish a sufficient relationship between the January conduct and the December conduct, he may not bring a claim for the January conduct itself. *See Ogden*, 2007 WL 2746626, at *6 ("Plaintiff may not advance a claim that predates three years prior to her filing of this case. Because she filed her complaint here on April 6, 2005, she cannot bring suit for actions that occurred on or before April 6, 2003").

Given that the continuing violations doctrine cannot apply to Webster's ELCRA claim, this Court may only consider the alleged conduct that occurred within the statute of limitations. On its own, false testimony in a courtroom is not conduct that "[denies] an individual the full and equal enjoyment of" a place of public accommodation under Michigan law. MICH. COMP. LAWS § 37.2302. Therefore, Webster's ELCRA claim must be dismissed as to Defendants AutoZone, Milton, and Lloyd.

### C. Count III: Abuse of Process

Next, Webster claims that Defendants AutoZone, Milton, Bertram,

Pallaschke, and Lloyd are liable for the tort of abuse of process under Michigan law. ECF No. 1 at PageID.26. As to Pallaschke and Lloyd, Webster alleges that they falsely accused Webster of retail fraud and did so because of racial animus. ECF No. 1 at PageID.27. As to AutoZone, Milton, and Bertram, Plaintiff argues that they too are liable because the employees were acting according to the store's policy of hyper-surveillance and prejudice against Black customers. ECF No. 1 at PageID.27–28.

Defendants AutoZone, Milton, and Lloyd argue that Count III must be dismissed against them because (1) it is time barred, and (2) it fails to state a claim for abuse of process. ECF No. 17 at PageID.147.

Like ELCRA claims, Michigan abuse of process claims are subject to a three year statute of limitations. MICH. COMP. LAWS § 600.5805. Although *Garg* related to an ELCRA claim, the opinion demonstrates that the Michigan Supreme Court intended to bar the continuing violations doctrine even beyond the civil-rights context. 696 N.W.2d at 662 ("We conclude that the 'continuing violations' doctrine is contrary to the language of § 5805 and hold, therefore, that the doctrine has no continued place in the jurisprudence of this state."). Therefore, the abuse of process claim must be dismissed because Webster fails to allege any tortious conduct by Defendants in his complaint within the three years before he filed.

As for the merits, under Michigan law, a claim for abuse of process must

allege (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Friedman v. Dozorc*, 312 N.W.2d 585, 595 (Mich. 1981) (citing *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911)). Specifically, the allegations must support an inference of "the improper use of process after it has been issued, not for maliciously causing it to issue." *Id.* (quoting *Spear*, 130 N.W. at 344).

Webster argues that he met the first prong of the abuse of process definition by alleging "Defendants' ulterior purpose of racial discrimination and gaining a competitive advantage over his business." ECF No. 20 at PageID.172. He then argues that he met the second prong because he alleged "Defendants committed improper acts of process in the regular prosecution of legal proceedings, including that Defendants fabricated evidence during the investigation and while testifying at preliminary examination." *Id.* at PageID.172.

However, Webster's complaint does not include any of those allegations. Instead, Webster merely alleges that Defendants "possessed the ulterior motive outside the intended purpose of the litigation, in the form of their racial bias and animus against Plaintiff." ECF No. 1 at PageID.27. He further alleges that Defendants' act of abuse was "falsely accusing Plaintiff of committing retail fraud when they knew such accusation was false, and/or was made with reckless disregard for the truth." *Id.* at PageID.27. Nowhere in the complaint does Webster

allege a motive in gaining a competitive business advantage nor that Defendants fabricated evidence or testified against him. The false accusations alone are not actionable, not only because of the time bar, but also because initiating a criminal proceeding for an improper purpose does not constitute an abuse of process under Michigan law. *Garcia v. Thorne*, 520 F. App'x 304, 311 (6th Cir. 2013) (quoting *Friedman*, 312 N.W.2d at 594 n.18). On the face of the complaint, the abuse of process claim must be dismissed.

      Moreover, amending the complaint would be futile because no set of facts could change this conclusion, which is a matter of law. Tellingly, Webster has failed to point to any Michigan precedent suggesting that false testimony by a nonparty—specifically a complaining witness in a criminal case—is an improper act in the regular prosecution of the proceeding. Instead, the only case he cites, *Est. of Roush ex re. Hardy v. Laurels of Carson City, L.L.C.*, involved allegations that an employee of the defendant facility improperly helped the plaintiff's patient advocate file a guardianship petition for a collateral purpose. No. 317406, 2014 WL 7004021, at *4 (Mich. Ct. App. Dec. 11, 2014). This Court disagrees with Webster's unexplained assertion that the conduct he alleges in his case "is akin to the plaintiff's allegations in *Roush*." ECF No. 20 at PageID.172.[5] Rather, the facts

---

[5] At the hearing, Webster argued that *Roush* was analogous because the defendant facility gave information to the patient advocate that led to a petition being filed in court. To the extent Webster interprets *Roush* to allow abuse of process claims to

in *Roush* bear little resemblance to the allegations here.[6]

During the hearing on September 12, 2024, Webster also analogized his case to that of *Marlatte v. Weickgenant*, in which the Michigan Supreme Court found that procuring a criminal warrant for the collateral purpose of seeking a settlement could state a claim for abuse of process. 110 N.W. 1061 (1907). Webster argued that this supports his position that a complaining witness in a criminal case could be the defendant for purposes of an abuse of process claim.[7] However, *Marlatte* deals not with witness testimony, but with the issuance of a warrant, which is undoubtedly "judicially issued process." *See Abuse of Process*, BLACK'S LAW DICTIONARY (12th ed. 2024). At base, *Marlatte* is not sufficiently analogous to compel a holding that witness testimony can meet the "improper act" prong.

Contrary to Webster's arguments, courts have declined to find that perjury may be considered the improper act[8] for an abuse of process claim under Michigan

---

be brought for causing the initiation of a legal proceeding, such an interpretation is contrary to established Michigan law. *See Friedman*, 312 N.W.2d at 595; *see also Spear*, 130 N.W. at 344.

[6] Notably, the *Roush* defendant assisted in the filing of a petition. 2014 WL 7004021 at *4. This type of participation evinces a higher degree of control over the legal process than simply testifying in a hearing as a witness.

[7] And despite Webster's argument to the contrary, the *Marlatte* decision, predating *Spear* by four years, does not disrupt the long-settled principle that in Michigan, causing the initiation of a criminal action cannot establish abuse of process. *Friedman v. Dozorc*, 312 N.W.2d 585, 595 (Mich. 1981) (citing *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911)).

[8] Rather, methods such as "depositions, motions, interrogatories and other requests for discovery, or legal maneuverings to compel or prohibit action by an opponent

law. *See Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 389 (E.D. Mich. 1982)[9] ("the court's research has failed to reveal an instance in which an allegation that defendants induced perjured testimony has been held to satisfy the second element of an abuse-of process claim"). Not to mention, there is no private cause of action for perjury under Michigan law. *Meyer v. Hubbell*, 324 N.W.2d 139, 141 (Mich. Ct. App. 1982). Rather, "the law deals with such improprieties by other means"—namely, a *criminal* action for perjury. *Sage Int'l*, 556 F. Supp. at 390. Evidently, allowing criminal defendants to sue witnesses for damages based on their testimony is a nonstarter, and the Court declines to allow it here.

What's more, a federal court in Pennsylvania, applying a similar common-law definition of abuse of process, held that such a claim may not be brought against a nonparty witness in a criminal proceeding:

> Plaintiffs argue that [the witness] abused legal process to "exact revenge" against them by providing false information to the investigating detectives and false testimony during the preliminary hearing. But these allegations are not enough to state a claim. In fact, this claim is simply ill-fitting in this context. The classic examples of abuse of process involve defendants that have some kind of control over the process, such as lawyers or investigators – people that can file warrant applications, pleadings, and other processes. . . *all invoke the authority of the court* and are, therefore, the type of process that will support an abuse of process claim." 1 AM. JUR. 2D *Abuse of Process* § 2 (emphasis added).

---

[9] The *Sage International* court dismissed an abuse of process claim against a *party* accused of soliciting perjured testimony, noting that "while subornation of perjury is certainly an 'abuse,' such an act, standing alone, does not necessarily make out the tort. Moreover, the law deals with such improprieties by other means." 556 F. Supp. at 390.

> . As alleged, [the witness] was merely a participant in the process, in providing information to law enforcement and testimony in court. He wasn't a lawyer, party, or applicant. As such, he was not in a position to intentionally control and distort the process against Plaintiffs, and so cannot be liable for abuse of process.

*Sanoski v. Mercer Cnty.*, No. 2:23-cv-571, 2024 WL 2392695, at *4 (W.D. Pa. May 23, 2024) (internal citations omitted). This Court finds this perspective persuasive.

Further, as a policy matter, it would be problematic to permit civil suits against individual witnesses—particularly against complaining witnesses in criminal cases—simply because of their testimony, whether truthful or not. There is a real risk that such claims may discourage witness participation and decrease reporting by victims in the criminal context; certainly, it would be more difficult for a witness or victim to come forward if doing so would expose them to civil liability for alleged perjury. This result would also potentially force federal courts to scrutinize state court criminal proceedings that happened years earlier to determine whether or not a witness lied on the stand, raising federalism concerns.

Without guidance from Michigan courts holding otherwise, this Court declines to find that plaintiffs may bring an abuse of process claim against former witnesses in a separate criminal case for allegedly perjured testimony. This means that Webster has not sufficiently alleged "an act in the use of process which is improper in the regular prosecution of the proceeding," and so Count III must be

dismissed.

## D. Count IV: Vicarious Liability

Webster's fourth claim, titled "vicarious liability," sets out a basis for why AutoZone, Milton, and Bertrand should be held vicariously liable for the actions of Pallaschke and Lloyd. ECF No. 1 at PageID.28–31. Defendants argue that this count must be dismissed, as "there is no such recognized claim under Michigan law." ECF No. 17 at PageID.148.

Defendants are correct. Vicarious liability is not an independent claim in Michigan but is instead a theory of liability for otherwise substantiated tort claims. *See Ryther v. OCB Rest. Co.*, No. 229013, 2002 WL 865782, at *2 n. 3 (Mich. Ct. App. Apr. 26, 2002) ("Although count one is captioned 'vicarious liability,' the proper cause of action is one for 'negligence,' since vicarious liability is the theory utilized to impose a cause of action of negligence against an employer for the negligent acts of its employees.") (citing *Candelaria v. BC Gen. Contractors*, 640 N.W.3d 348, 352 (Mich. Ct. App. 1999) and *Helsel v. Morcom*, 555 N.W.2d 852, 855 (Mich. Ct. App. 1996)); *see also, AeroFund Fin., Inc. v. Sexton Landscape, Inc.*, No. 2:16-CV-13730, 2018 WL 6809185, at *4 (E.D. Mich. Sept. 29, 2018) ("vicarious liability is not an independent cause of action").

To the extent that Webster intended to assert an independent claim of vicarious liability, the claim must be dismissed. This Court, viewing Webster's

allegations generously, reads those in Count IV as merely establishing a theory of liability for Counts I-III against AutoZone, Milton, and Bertrand, rather than setting out an independent claim. However, as set out above, each of those claims must be dismissed. Because Webster failed to plead a basis for individual liability as to Pallaschke and Lloyd, his claims may not proceed against AutoZone and Milton on a theory of vicarious liability. Therefore, Count IV must be dismissed.

### E. Sanctions

Defendants also request that sanctions be imposed against Webster under 28 U.S.C. § 1987. ECF No. 17 at PageID.149. Having reviewed the request and the pleadings, this Court finds that sanctions are inappropriate, so the request will be denied.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 17, is **GRANTED**.

Further, it is **ORDERED** that Defendants' request for sanctions is **DENIED**.

Further, it is **ORDERED** that Counts I–IV of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE** as to Defendants AutoZone, Milton, Lloyd, Bertrand, and Pallaschke.

**This is a final order and closes the above-captioned case as to these**

**Defendants only.**

                                                                    */s/Susan K. DeClercq*
                                                                    SUSAN K. DeCLERCQ
Dated: 9/19/2024                                    United States District Judge